**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **DONNA CLARK** | : | **DOCKET NO.  2:12-cv-650** |
| **VS.** | : | **JUDGE MINALDI** |
| **U.S. COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of Social Security Benefits.  This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

### I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits alleging disability beginning on April 4, 2009.  Tr. 98-102.  The claim was initially denied on July 10, 2009.  Tr. 54-57. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. 60.  At the hearing held on August 5, 2010, plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  Following the hearing the ALJ issued an unfavorable decision dated October 14, 2010.  Tr. 8-19.  In this decision, the ALJ applied the five-step sequential evaluation process and determined that plaintiff was not disabled under the Social Security Act from April 4, 2009 through the date of the decision.  *Id.*  The ALJ found that plaintiff's impairments of

degenerative disc disease of the lumbar spine, chronic left L4-L5 radiculopathy, generalized polyneuropathy affecting both lower extremities, and obesity were severe but she found she retained the residual functional capacity ("RFC") to perform sedentary work with certain restrictions.  *Id.*  Relying on the testimony of a vocational expert ("VE") the ALJ found that plaintiff was capable of performing past relevant work.  Thus, the ALJ determined that plaintiff was not disabled.  *Id.*

Plaintiff filed a request for appellate review of this decision and on February 14, 2012 her request was denied.  Tr. 1-5.  On March 12, 2012 plaintiff filed suit in this court appealing the determinations of the Commissioner.  Doc. 1.

## II.  FACTS AND MEDICAL EVIDENCE

### A.  Facts

Plaintiff, age 49 at the time of the hearing, is a high school graduate and has post-graduate training as a security guard and nurse's aide.  Tr. 28, 120.  She testified that she was last employed as an attendant at a home for people with disabilities but only worked for less than a month when she was injured on the job.  Tr. 28-29.  Her other past employment included working as a cook, supervisor at a fast food restaurant, PBX operator[1], reservationist, sales associate, security guard, and security supervisor.  Tr. 29-30, 114.

Plaintiff testified that she injured her back at work when she was trying to change a diaper on an overweight resident.  Tr. 31-32.  As of the date of the hearing she was receiving worker's compensation for her injury.  Tr. 32.  At the hearing plaintiff testified that, following her injury, she went to physical therapy twice, had three or four injections in her back, four or five MRIs and other tests done.  Tr. 33.  She stated that she was referred to pain management and

---

[1] According to the Dictionary of Occupational Titles, a private branch exchange ("PBX") operator or switchboard operator operates a cord or cordless switchboard to relay incoming, outgoing and interoffice calls.  Dictionary of Occupational Titles, PBX Operator (March 12, 2014), http://www.occupationalinfo.org/23/235662022.html.

will have to have surgery "down the line" because she still has pain on her left side. *Id.* She stated that she walks with a cane because she never knows when her left leg will give out. *Id.*

When the ALJ asked plaintiff what she does on a normal day she replied that she takes her medicine before she gets out of bed and waits for the pain medicine to take effect. Tr. 34. She goes from her room to the sofa, recliner, or rocker to watch TV and read her Bible. Tr. 35. She stated that she takes naps during the day because she has sleep apnea with which she was diagnosed before she hurt her back. *Id.*

Plaintiff stated that her sister goes with her to do her shopping and she does not do much cooking because she cannot stand for very long. Tr. 36. Her sister and family help her much and bring her meals. *Id.* She testified that she goes to church on Wednesday nights and every Sunday morning and does missionary work at the church on most Thursdays. *Id.* She also stated that she sings in the choir at her church. *Id.*

She testified that she is able to drive but her vehicle is inoperable so she has not driven recently. Tr. 38. With the assistance of her cane, plaintiff stated that she can walk 20 to 30 feet but has to stop because of tingling and numbness in her left leg which radiates up her hip and to her arms. *Id.* With her cane she can stand in one place for 2 to 3 minutes. Tr. 39. After sitting for a while her middle and lower back hurts and she cannot lift because she cannot rely on her left hand because it goes numb. *Id.*

Upon questioning by her attorney plaintiff stated that she was diagnosed with irritable bowel syndrome in 2000 and it is aggravated by the pain medications she has to take. Tr. 40-41. This condition often keeps her from attending many events. Tr. 42.

### B.  *Medical Evidence*

#### 1.  **Southwest Louisiana Center for Health Services**

The medical evidence from Southwest Louisiana Center for Health Services shows that, several years prior to her alleged onset of disability, plaintiff suffered from irritable bowel syndrome and carpel tunnel syndrome.  Tr. pp. 179, 178, 172.  Following her alleged onset of disability plaintiff was seen on July 2, 2009, for a medication refill.  The notes indicate that plaintiff had no new complaints and that her diagnosis of chronic pain was under management by Dr. Rubino.  Tr. 168.  On September 2, 2009, plaintiff complained of fatigue and fever.  Tr. 167.  The notes indicate that she saw Dr. Rubino and was administered a shot but her pain was worsening.  *Id.*  A pain assessment noted a score of 6 on a scale of 1-10.  *Id.*  On October 29, 2009, plaintiff appeared for follow up for medicine refills.  Tr. 166.  No pain assessment was noted.  *Id.*  The notes indicate her back pain was being treated by a neurosurgeon.  *Id.*

At her January 27, 2010, appointment her pain was noted as an 8 on a scale of 1-10.  Tr. 165.  On February 6, 2010, plaintiff complained of a rash and itching.  Tr. 164.  No pain assessment was noted.  *Id.*  On June 7, 2010, plaintiff complained of fluid build up in her lower extremities and a sore throat.  Tr. 163.  Her pain assessment indicated a 10 on a scale of 1-10 with the pain located in her back and feet.  *Id.*

Plaintiff presented for follow up on August 16, 2010, where she complained of back pain but, according to the history. plaintiff stated that Dr. Rubino did not want to do surgery at the time.  Tr. 353-56. The notes indicate that she was "turned away from Dr. Lopez," a pain management specialist, but was scheduled to see Dr. Eddy, another pain management specialist. *Id.*

-4-

On November 8, 2010, plaintiff presented for a follow up to have her prescription refilled.  Tr.  357.  She indicated at that visit that she wanted to file for disability and brought her disability papers.  *Id.*  She was referred for a disability evaluation.  *Id.*  She complained of back pain, stiffness, muscle weakness, loss of strength and muscle aches.  *Id.*  A physical examination of her extremities noted no clubbing, cyanosis, edema or deformity and normal full range of motion of all joints.  *Id.*  It was further noted that plaintiff was undergoing physical therapy for her back pain.  *Id.*

On December 8, 2010, plaintiff returned in order to have her disability papers completed.  Tr.  360.  She complained of diarrhea and low back pain.  *Id.*  Her past medical history indicates hypertension, obesity, low back pain with radiculopathy, GERD, obstructive sleep apnea and irritable bowel syndrome.  *Id.*  Following examination the physician's impression was back pain with radiculopathy most likely associated with lumbar disc disease.  *Id.*  An MRI was recommended and she was referred to pain management.  *Id.*  It was further noted that she was experiencing a flare up of her irritable bowel syndrome which was treated with medication and stool studies were ordered.  *Id.*

On that same date Dr. Melina Roman Gerardino completed a Medical Assessment of Ability to do Work-Related Activities – Physical.  Tr. 348-50.  She concluded that plaintiff could occasionally lift a maximum of 5 pounds and frequently lift 3-5 pounds, could stand/walk for 5 minutes at a time without interruption and a total of 10-15 minutes in an 8 hour day, and could sit for 5 minutes at a time without interruption and a total of 1 hour in an 8 hour day.  *Id.*  Dr. Gerardino opined that plaintiff should never bend, stoop, squat, crawl, crouch, kneel, balance, climb, and reach.  *Id.*  Plaintiff could occasionally handle, feel, push, and pull.  *Id.*  She found

that plaintiff should never be exposed to heights, fumes, dust, vibration, moving machinery, temperature extremes, or chemicals and could occasionally be exposed to noise.  *Id.*

Plaintiff was seen again on January 25, 2011, for a follow up and medication refill.  Tr. 365-68.  She complained of lumbar back pain with radiculopathy, numbness and tingling.  *Id.* Her pain level was noted to be an 8 on a scale of 1-10.  *Id.*  She stated that she needs a cane to ambulate.  *Id.*  On February 24, 2011 plaintiff complained of leg swelling and dull leg pain.  Tr. 369-71.  A physical exam showed left and right pretibial edema.  *Id.*  She was prescribed medication and advised to schedule a follow up appointment.  *Id.*

### 2.  Drs. Kaimal, Shamieh, and Jordan

For her complaints of sleep apnea plaintiff was seen by Dr. Jana Kaimal and underwent a sleep study on February 16, 2006, with a diagnosis of obstructive sleep apnea and periodic leg movement disorder.  Tr. 189-91.  On June 6, 2006, a second sleep study conducted by Dr. Fayez Shamieh revealed a diagnosis of obstructive sleep apnea.  Tr. 338-42.  Following these studies she was seen by Dr. Manley Jordan for a second opinion regarding her diagnosis.  Tr. 333-34. His impression was that she suffered from moderate to mild sleep apnea and he recommended that she continue treatment with a CPAP.  *Id.*

### 3.  Dr. Kevin Young

Plaintiff was seen by cardiologist Dr. Young on January 15, 2007, with complaints of ambulatory leg discomfort, left greater than right.  Tr. 322-23.  His report indicates that he had seen plaintiff in 2006 for hypertension and hyperlipidemia and she had undergone and echocardiogram with normal results and nuclear testing with no evidence of impaired myocardial perfusion.  *Id.*  His assessment was bilateral leg discomfort – unlikely to peripheral vascular disease with normal physical examination.  *Id.*

### 4.   W.O. Moss Regional Medical Center

Evidence submitted from W.O. Moss shows that plaintiff was seen in the emergency room on April 5, 2009, complaining that she hurt her back last night at work.  Tr. 210-12.  She was released the same day and given a muscle relaxer and pain medication.  *Id.*  She returned to the emergency room on April 11, 2009, complaining of a sore throat and back pain.  Tr. 207-09.  She was prescribed medication and released.  *Id.*

### 5.   Bayou Comp Health Center

On April 22, 2009, plaintiff complained that she injured her back at work.  Tr. 224.  Her pain assessment was a 6 on a scale of 1-10.  *Id.*  She was advised to continue her muscle relaxers and pain medication and she was referred for a lumbar MRI.  On May 6, 2009, plaintiff presented for follow up and continued to complain of back pain.  Tr. 223.  Her pain assessment was a 9 on a scale of 1-10.  *Id.*  The notes indicate that her MRI was reviewed and she was referred to a neurosurgeon.  *Id.*

### 6.   Physicians Imaging – MRI

An MRI conducted on April 26, 2009, showed a bulging disc at L4-5 with superimposed right lateral disc protrusion and right neural canal narrowing and a bulging disc eccentric to the left at L5-S1.  Tr. 215.

### 7.   Dr. Gregory Rubino

Plaintiff was referred to Dr. Rubino, a neurosurgeon, for evaluation of her lower back pain.  Tr. 228-32.  On May 11, 2009, plaintiff reported that her usual pain level was a minimum of 4 and a maximum of 10.  *Id.*  Her pain interferes with some but not all of her daily activities and interferes with her sleep.  *Id.*  Since the onset her pain has moderately increased.  *Id.*  She described her pain as burning in the left buttock, left thigh, left knee, calf, lower left leg and

numbness and tingling in the entire left foot.  *Id.*  Plaintiff stated that her pain was aggravated by twisting and bending, sitting, standing for 5 minutes, and walking.  *Id.*

Dr. Rubino's examination of plaintiff revealed that her gait and station were normal.  *Id.* He noted that she was able to undergo exercise and/or participate in an exercise program.  *Id.*  He noted that her muscle strength was 5/5 in all areas and her foot and plantar flexation was normal and she was able to walk on heels and toes.  *Id.*  He reviewed the April 29, 2009, MRI and noted that it showed mild degenerative disease without neural impingement.  His impression following the assessment was that she suffers from lumbosacral pain and left sciatic pain without obvious radiologic abnormality.  *Id.*  He recommended physical therapy and a lumbar epidural steroid injection.  *Id.*

On September 2, 2009, plaintiff returned to Dr. Rubino.  Tr. 287-90.  He noted that she received an epidural lumbar injection on August 14, 2009, and she complained that her condition had worsened.  *Id.*  He also noted that she had received 18 sessions of physical therapy from June 22 through July 30, 2009, and that she stated her condition had slightly improved.  *Id.*  Her leg pain no longer radiated below her knee.  *Id.*  Her physical examination again revealed full muscle strength.  *Id.*  His impression following the appointment was that physical therapy helped ease her lower back and leg pain but the steroid injection increased her pain.  *Id.*  He recommended that she continue with her low back exercises.  *Id.*  Dr. Rubino also noted that her symptoms are more severe than one would predict from current imaging.  *Id.*  He would like to check a lumbar MRI with STIR (Short TI Inversion Recovery).  *Id.*

On January 11, 2010, plaintiff presented for a follow up.  Tr. 293-95.  He noted that an MRI was done on November 9, 2009.  *Id.*, Tr. 292.  Dr. Rubino's impression was that the MRI revealed average degenerative disc disease and a small left sided L5-S1 disc bulge that may be

contributing to plaintiff's symptoms.  *Id.*  He noted that plaintiff's symptoms overall were greater than one would expect from the mild disc disease.  *Id.*  His plan was to try another round of physical therapy and another steroid injection.  *Id.*

Plaintiff returned on May 17, 2010, for follow up for lower back pain.  Tr. 300-02.  Dr. Rubino noted that on May 12, 2010, plaintiff underwent an EMG study with results showing chronic L4 and L5 radiculopathy.  *Id.*  Dr. Rubino determined that the pain was severe enough to consider surgery but plaintiff opted to wait and discuss surgery after her grandchild was born. *Id.*  She was advised to return in July with a repeat MRI.  *Id.*

### 8.   Stelly Physical and Occupational Therapy, LLC

Plaintiff was treated from June 22 through July 30, 2009, at Stelly Physical and Occupational Therapy.  Tr. 286.  On August 12, 2009, a report was prepared that noted plaintiff had 18 visits with great participation.  *Id.*  The therapist concentrated on stretching and conditioning and gave plaintiff a home exercise program.  *Id.*  It was noted that plaintiff has less frequency, duration, and intensity of symptoms.  When she was contacted on August 5, 2009, she stated that she was "doing good."  *Id.*

Plaintiff underwent an additional 11 physical therapy treatments from April 20 through May 14, 2010.  Tr. 297.  A report notes that she had progressed and was able to participate in greater than 30 minutes of continuous therapy but still complained of intense pain. *Id.*

### 9.   Dr. Timothy Best

Dr. Best conducted a nerve conduction study on May 12, 2010.  Tr. 298-99  His conclusion was that plaintiff suffered chronic left L4, L5 radiculopathy and generalized predominantly sensory polyneuropathy affecting both lower limbs.  *Id.*

### 10. Dr. Charles Brdlik

An MRI study done on July 19, 2010, revealed a small disc protrusion on the left at the L5-S1 level.  Tr.  303-04.  No other acute pathology was noted.  *Id.*

### 11. Dr. Charles Lee

Dr. Charles Lee , a state medical consultant, conducted a physical residual functional capacity (RFC) assessment on July 9, 2009.  Tr. 264-72.  He determined that plaintiff had exertional limitations of occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking six hours in an eight-hour-work day, and sitting six hours in an eight-hour-work day.  *Id.*  He found no limitations on plaintiff's ability to push and pull.  *Id.*  He indicated that plaintiff could frequently balance and occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  *Id.*  Plaintiff was limited to never climbing ladders, ropes and scaffolds.  *Id.*  There were no manipulative, visual, communicative, or environmental limitations found.  *Id.*  Dr. Lee recommended that plaintiff be assessed with a Light RFC.  *Id.*

## III.   STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'"  *Id.*  (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is

"such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## IV.  LAW AND ANALYSIS

### A.  *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461.  The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit."  *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)).  The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[2]; (3) whether the claimant's

---

[2]  A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

> impairment meets or equals the severity of an impairment listed in
> 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the
> impairment prevents the claimant from doing past relevant work
> (whether the claimant can return to his old job); and (5) whether
> the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520).  If the claimant meets the burden of proof on the first four

steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can

perform other substantial work in the national economy.  *Id.*  "Once the Commissioner makes

this showing, the burden shifts back to the claimant to rebut this finding."  *Id.* (quoting *Newton v.

Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

   The analysis ends if the Commissioner can determine whether the claimant is disabled at

any step.  *Id.* (citing 20 C.F.R. § 404.1520(a)).  On the other hand, if the Commissioner cannot

make that determination, he proceeds to the next step.  *Id.*  Before proceeding from step three to

step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Id.*

"The claimant's RFC assessment is a determination of the most the claimant can still do despite

his physical and mental limitations and is based on all relevant evidence in the claimant's

record."  *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  Specifically, in determining a

claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which

these symptoms reasonably can be accepted as consistent with the objective medical evidence

and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96-8p.  The ALJ must also

consider any medical opinions (statements from acceptable medical sources) that reflect

judgments about the nature and severity of impairments and resulting limitations.  20 C.F.R. §

404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the

---

irrespective of age, education or work experience."  752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341
(5th Cir. 1984)).  If a severe impairment or combination of impairments is found at step two, the impairment or
combined impact of the impairments will be considered throughout the disability determination process.  20 C.F.R.
§§ 404.1520, 404.1523.  A determination that an impairment or combination of impairments is not severe will result
in a social security determination that an individual is not disabled.  *Id.*

sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at step five of the sequential analysis. The ALJ found that considering plaintiff's RFC, she was capable of performing past relevant work as a data entry clerk and cardiac monitor technician.  Tr. 21.

### B.  *Plaintiff's Claims*

In her appeal plaintiff argues that substantial evidence does not support the ALJ's decision.  Specifically, she sets forth the following arguments:

(1)     The ALJ erred in failing to give the claimant's treating physician and the claimant's complaints proper consideration.   The treating physician supported Ms. Clark's credibility as to the severity of her impairment. The testimony of Donna Clark is further supported by the objective testing in the medical records, as well as the new medical records provided to the Appeals Council.

(2)     The ALJ erred in finding that Donna Clark's physical impairments do not meet or equal a listed impairment as described in the regulations.

(3)     The new medical evidence submitted by the treating physician shows the claimant, Donna Clark, does not have a residual functional capacity to perform her past relevant work or sedentary work and the Appeals Council erred in not remanding the case for further hearing, giving the treating physician's opinion the weight it deserved.

### 1.   Did the ALJ err in assessing plaintiff's credibility?

Plaintiff argues that the ALJ failed to assign proper weight to plaintiff's subjective complaints of pain and her testimony regarding her physical limitations.  She submits that the ALJ was incorrect in finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were only partially credible.  Plaintiff maintains that she suffers from long term sleep apnea, pulmonary issues, lower back disc injuries, left leg weakness,

bilateral carpal tunnel syndrome, irritable bowel syndrome and COPD.  Plaintiff submits that objective medical evidence in the form of the RFC completed by Dr. Gerardino[3] and records from the SWLA Center for Health Services, MRI's, sleep studies, and pulmonary tests show that she has consistently complained of severe pain and is not capable of performing sedentary work on a sustained basis.

The Commissioner argues that substantial evidence supports the ALJ's decision that plaintiff's allegations of disabling pain were not credible.  The Commissioner points to medical records where plaintiff's self-reported symptoms were inconsistent with objective findings and instances when her testimony was inconsistent with her reported activities of daily living.  Additionally, the Commissioner notes that although plaintiff was diagnosed with carpel tunnel syndrome and sleep apnea prior to April 2004 she continued to work with these impairments.

When assessing credibility the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence.  SSR 96-7P.  The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.   20 C.F.R. § 404.1529(c)(4).  Credibility determinations are within the province of the ALJ who has had an opportunity to observe whether the claimant seems to be disabled.  *Loya v. Heckler,* 707 F.2d 211, 215 (5th Cir.1983).  The law requires the ALJ to make findings regarding a claimant's subjective complaints and articulate the reasons for rejecting any subjective complaints.  *Falco v. Shalala,* 27 F.3d 162, 163-64 (5th Cir.1994).  Hoverer, ALJ need not follow formalistic rules in his credibility determination.  *Id.*  We accord great deference to the ALJ's credibility determination.  *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir.2000).

---

[3] As discussed in further detail below the RFC prepared by Dr. Gerardino dated December 8, 2010, is outside of the relevant period for consideration.

The ALJ must consider subjective evidence of pain.  *Scharlow v. Schweiker,* 655 F.2d 645, 648 (5th Cir.1981).  However, the ALJ has discretion to determine the pain's disabling nature since he has the primary responsibility of resolving conflicts in the evidence.  *Jones v. Heckler,* 702 F.2d 616, 621-22 (5th Cir.1983).  Whether an individual is able to work despite some pain is within the province of the ALJ and should be upheld if supported by substantial evidence.  *Id.*  The mere presence of pain does not render a claimant disabled.  *Barajas v. Heckler,* 738 F.2d 641, 644 (5th Cir.1984).  Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment. *See Haywood v. Sullivan,* 888 F.2d 1463, 1470 (5th Cir.1989).  The Fifth Circuit requires that a claimant's subjective complaints must be corroborated, at least in part, by objective medical testimony.  *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001).

In this case the ALJ properly considered plaintiff's complaints of pain and found that, although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[, plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment."  Tr. 16.  In making her findin, the ALJ considered the objective medical evidence, including the MRIs that characterized plaintiff's degenerative lumbar changes and disc bulging as "mild" with only a "small" disc protrusion.  *Id*., Tr. 215, 292, 303-04.  Additionally, the ALJ noted that plaintiff's treating neurologist Dr. Rubino found that plaintiff's symptoms were more severe than expected based on the objective medical studies.  *Id*., Tr. 287-90, 293-95.  The ALJ noted that when Dr. Rubino suggested surgery because of plaintiff's severe pain, she did not want to discuss surgery until after the birth of her grandchild.  *Id.,* Tr. 300-02.

The ALJ found that plaintiff's credibility was further diminished by her inconsistent reports of pain.  The evidence submitted from plaintiff's primary physicians at SWLA Center for Health Services showed that from April of 2009 to June of 2010 plaintiff occasionally reported pain ranging from a six to a ten but did not report pain in July 2009 October 2009 and April 2010.  *Id.*  Tr. 168, 166, 164.  Additionally, the ALJ found that plaintiff's allegations of pain are inconsistent with reports made to her treating physicians.  For example the ALJ noted that she told Dr. Rubino that her pain was aggravated by sitting but she testified that most of her day is spent sitting on her sofa or recliner watching TV.  *Id.*  Tr. 247, 35.

The ALJ noted that plaintiff's testimony regarding her activities of daily living and the Function Report that she completed for the Social Security Administration on June 24, 2009, also conflict.  While plaintiff testified that she attends church twice a week and does missionary work once a week, her Function Report indicates that she does not go places and only goes to her appointments.  Tr. 17, 36, 133-41.

Based on the foregoing, the ALJ determined that plaintiff's allegations of pain were only partially credible and that she maintained the ability to perform sedentary work with the exceptions of no climbing of ladders, ropes, or scaffolds and only occasional stooping, kneeling, crouching and crawling.  Tr. 15.  After reviewing the medical evidence in the record, we find that the ALJ's credibility determination and her conclusion that plaintiff's pain was not sufficient to prevent gainful activity are supported by substantial evidence.

### 2.  Did the ALJ err in finding that plaintiff's physical impairments did not meet or equal a listed impairment as described in the regulations?

Plaintiff argues that her impairments meet the listed impairments described in 20 CFR Part 404, Subpart P, Appendix 1, Listing 1.04A for disorders of the spine.  Relying on the December 2010 RFC conducted by Dr. Gerardino and the EMG study performed by Dr. Best

-16-

plaintiff maintains that her symptoms qualify under Listing 1.04A.  Additionally, plaintiff contends that the ALJ failed to considered her morbid obesity and irritable bowel syndrome in combination with her lumbar disc injuries which should have led to a finding that she met the Listing 1.04A.

In response, the Commissioner asserts that the ALJ correctly found at Step 3 that plaintiff did not have an impairment or combination of impairments that meets or medically equals the listing found in 1.04A.  The Commissioner maintains that the requirements for meeting a listing are "demanding and stringent" and plaintiff has failed to meet her burden of proving that she meets all of the medical criteria of the listing.  Doc. 14, p. 6.

The listings set out at 20 C.F.R. § 404 are descriptions of physical and mental illnesses and abnormalities which are categorized by the body system they affect.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley,* 110 S.Ct. 885, 891 (1990); 20 C.F.R. § 404.1525 and § 416.925.  Thus, a finding that a claimant's impairment satisfies a listing compels a finding of disabled without any further analysis.  Listings criteria are "demanding and stringent." *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir.1994).  A mere diagnosis of a condition will not suffice.  The claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." § 404.1525(d); § 416.925(d).  The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a Step 3 listing determination. *Sullivan,* 110 S.Ct. at 891.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir.1990).

Listing 1.04A requires a disorder of the spine with evidence of nerve root compression

characterized by neuro-anaotmic distribution of pain as well as limitation of spinal motion and motor loss (atrophy with associated muscle weakness) and sensory or reflex loss.  Additionally, if the lower back is involved, a positive straight leg test is required while both sitting and supine. 20 C.F.R. § 404, subpt. P, app. 1, Listing 1.04A.  Here the ALJ found that the "signs, symptoms and history of treatment" presented in plaintiff's medical evidence failed to meet all the criteria of Listing 1.04A.[4]  This court has examined the medical evidence and finds that the determination made by the ALJ is supported by substantial evidence.

The relevant medical evidence does not show that plaintiff suffered from any motor loss, reflex loss or any evidence of a positive straight leg test.  Physical exams performed by Dr. Rubino on May 11, 2009, and September 2, 2009, show normal muscle strength, normal muscle tone and size, normal reflexes and a normal spinal inspection except for a moderate muscle spasm.  Tr. 247-51, 287-90.

Plaintiff relies on the RFC report from Dr. Gerardino which indicates loss of muscle strength in plaintiff's left leg, an abnormal reflex in her knee and a positive straight leg test.  Tr. 348-50.  This evidence was submitted to the Appeals Council following plaintiff's administrative hearing.  Tr. 4.  Plaintiff did not begin seeing Dr. Gerardino until after October 14, 2010, the date of the ALJ's decision denying her claim.  Tr. 360-64.  Her first visit with Dr. Gerardino was on December 8, 2010 and the report indicates that she was seen "to discuss disability forms."  Tr. 360.

Initially the court notes that this evidence dated December 8, 2010, cannot be considered because it is outside of the period for plaintiff's disability claim and Dr. Gerardino does not

---

[4] The ALJ considered plaintiff's obesity but not her irritable bowel syndrome because she did not find that the irritable bowel syndrome constituted an impairment based on the fact that she was diagnosed with this condition well before the alleged onset of disability yet she continued to work with this condition.  The ALJ additionally noted that plaintiff has not sought treatment for irritable bowel syndrome since her alleged onset.  Tr. 17.

indicate that she is opining about plaintiff's limitations during the relevant time period.  Social Security Regulation 20 C.F.R. § 404.970(b) provides that when "new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."[5]   The relevant time period in this matter is April 4, 2009, through October 14, 2010.  Evidence that relates to a period after the ALJ's decision is not material and does not provide a basis for reversal.

Furthermore, and even in the event the court considered this evidence, the report from Dr. Gerardino fails to support a conclusion that plaintiff should have been found disabled at Step 3. As previously stated plaintiff has the burden of proving that she meets each and every criteria in the Listing and if only some impairments are manifested the Listing is not met. The report fails to indicate whether plaintiff experiences limitation of spinal motion and whether the positive straight leg test was administered while both sitting and supine.

For these reasons, the court finds that the opinion of the ALJ which found that plaintiff did not meet Listing 1.04A is supported by substantial evidence.

### 3. Did the ALJ err in determining that plaintiff had the RFC to perform sedentary work with certain restrictions and that she was capable of performing her past relevant work?

Plaintiff argues that the medical evidence submitted along with plaintiff's testimony establish that she is disabled and does not have the RFC to perform skilled or unskilled sedentary work on a consistent basis.  Plaintiff asks the court to review all the medical evidence submitted,

---

[5] If a claimant submits new and material evidence which relates to the period before the ALJ's decision, the Appeals Council must consider the evidence in deciding whether to grant a request for review of an ALJ's decision.  20 C.F.R. § 404.970(b).  Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based.  *Higginbotham v. Barnhart,* 405 F.3d 332, 337 (5th Cir.2005).  When reviewing the ALJ's decision, this court should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported.  *Higginbotham v. Barnhart,* 163 F. App'x 279, 281-82 (5th Cir.2006).

including the new medical evidence submitted to the Appeals Council to determine if the ALJ's

RFC decision was based on substantial evidence.  In particular, plaintiff points to the records and

report of Dr. Gerardino[6] who she claims supports her position that she is not capable of returning

to work.

The Commissioner maintains that the ALJ's decision that plaintiff had the RFC to

perform sedentary work with no climbing of ladders, ropes, or scaffolds and only occasional

stooping, kneeling, crouching and crawling is supported by the relevant evidence in the record

and plaintiff's testimony.

In this case and despite a finding by the state agency medical consultant, Dr. Charles Lee,

that plaintiff was capable of performing light work [Tr. 264-72], the ALJ assessed a more limited

RFC.  The ALJ stated:

> [C]onsideration has been given to the report of the State agency
> medical consultant.  This opinion was based on information
> contained in the record at the time of the state agency
> determination in this case, and no medical records generated or
> provided after that date were considered by the state agency
> consultant.  Specifically, the results of the May 2010 EMG nerve
> conduction study and the November 2009 and July 2010 MRI's
> were not available when State agency medical consultant rendered
> his opinion in July 2009.(Exhibits 9F, 10F, and 11F).  Also, the
> State agency medical consultant did not have the benefit of Dr.
> Rubino's most recent report of May 2010, in which Dr. Rubino
> suggested a surgical option after noting that the claimant had not
> benefited from either steroid injections or physical therapy.(Exhibit
> 11F).  The additional medical evidence received (after the date of
> the state agency determination above) in the course of developing
> the claimant's case for review at the administrative hearing level
> justifies a conclusion that the claimant's impairments are more
> limited than was concluded by the state agency consultant.

Tr. 18.  In assessing her RFC the ALJ additionally considered plaintiff's testimony and stated

that although not wholly credible, "her allegations have not been entirely discounted in

---

[6] As previously stated, plaintiff began seeing Dr. Gerardino after the date of the ALJ's written opinion which is outside the relevant period for determining plaintiff's disability.

determining her residual functional capacity." *Id*.  The ALJ considered plaintiff's subjective complaints of pain including the fact that when she presented at the emergency room on April 11, 2009 her pain was an 8 on a scale of 1 to 10 and despite the fact that she attempted physical therapy on two occasions and underwent two steroid injections she continued to experience pain. *Id*.

In reaching her conclusion that plaintiff was capable of returning to her past relevant work as a PBX operator and a reservation clerk, the ALJ relied on the expert opinion of the VE, Ms. Avery Majors.  Ms. Majors testified that a person of plaintiff's same age, education and vocational experience but limited to sedentary work with the restrictions of no climbing of ladders, ropes, scaffolds, and only occasional stooping, kneeling, crouching and crawling, could perform the jobs of PBX operator or reservation clerk.  Tr. 48.  Ms. Majors classified both jobs as sedentary according to the Dictionary of Occupational Titles.  Tr.44, 46.

Our review of the record reveals that substantial evidence supported the ALJ's determination that plaintiff had the residual functional capacity to do a reduced range of sedentary work and that she could return to her past relevant work.

## V.    CONCLUSION

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled.   It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 2nd day of April, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE